**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT FLORIDA**
**Jacksonville Division**

| | | |
|---|---|---|
| **HARRIET BROCK,**<br>**Plaintiff,** | ) | |
| **vs.** | ) | **Case No. 3:26-cv-2559** |
| **JACKSONVILLE HOUSING AUTHORITY,** | ) | |
| **CHERON CORBETT, in her official capacity as President and CEO of Jacksonville Housing Authority, and** | ) | |
| **ANDREW DENICOLA, in his official capacity as Executive Director of the HCV Program at Jacksonville Housing Authority,**<br>**Defendants.** | ) | |

**MOTION FOR PRELIMINARY INJUCTION AND MEMORANDUM OF LAW IN SUPPORT**

COMES NOW Plaintiff Harriet Brock, by and through her undersigned attorneys, and moves this Court pursuant to Fed. R. Civ. P. 65(a) and Local Rule 6.02 for a preliminary injunction which enjoins Defendants Jacksonville Housing Authority, Cheron Corbett, and Andrew Denicola from terminating Plaintiff's Housing Choice Voucher (HCV) Program assistance, requires Defendants to rescind their July 28, 2026, final agency decision to terminate Plaintiff's HCV Program assistance and requires Defendants to continue Plaintiff's HCV Program assistance.

Ms. Brock has filed a verified complaint against Defendants (JHA) seeking injunctive and declaratory relief, as well as damages, and is filing a Motion for Preliminary Injunction seeking relief from JHA prior to a determination of the case on the merits.

A preliminary injunction in this case is necessary to ensure that Ms. Brock will not suffer irreparable harm resulting from the denial of her constitutional rights. Absent this Court's intervention, there is a substantial likelihood that Ms. Brock will be evicted, become homeless, or both. Ms. Brock is suffering and will continue to suffer irreparable harm because of JHA's improper termination of her Section 8 Housing Choice Voucher. There is a reasonable likelihood that Plaintiff will succeed on the merits of her claims because it is well-established that procedural due process under the Fourteenth Amendment to the United States Constitution requires a hearing prior to termination of public housing assistance, and JHA failed to provide Plaintiff with the required hearing. Defendants receive federal funds from HUD to administer the Section 8 Voucher Program, and would suffer minimal harm, if any, compared to the threat of eviction and homelessness Plaintiff now faces. The public interest will be furthered by entry of a preliminary injunction because of this country's policies emphasizing the importance of providing safe, affordable housing to low-income persons.

**<u>Facts Demonstrating Entitlement to Relief</u>**

For the last 4 years, Ms. Brock has rented a unit at 7107 Irving Scott Dr., Jacksonville, FL 32209, from a private landlord utilizing a Housing Choice Voucher administered by JHA. While the rent for the rental unit is $1,270.00, because of Plaintiff's low income, her rental obligation is currently $0.

Through the HCV Program, JHA has subsidized Ms. Brock's rent by paying her landlord the balance of rent owed via the HAP in the amount of $1,270.00. JHA also provides Ms. Brock with a $20.00 utility reimbursement to use toward her utility bills.

<u>Informal Hearing Concerning Income Calculation</u>

On October 3, 2025, JHA issued a notice (2025 Payment Notice) to Plaintiff demanding she pay JHA $9,691.00. JHA had calculated this amount using income earned by Plaintiff's adult grandson which he had concealed from Plaintiff and JHA while purportedly attending college in Georgia and having no income. A copy of the 2025 Payment Notice is attached as Exhibit 1.

Importantly, the 2025 Payment Notice does not threaten termination or actually terminate Plaintiff's HCV Program Assistance. The 2025 Payment Notice does offer the right to a grievance. As permitted by the Payment Notice, on October 11, 2025, Plaintiff requested an informal hearing concerning the calculation of her income.

The issues considered at the hearing did not involve a termination of Ms. Brock's assistance, but rather whether her income was calculated correctly. Following the hearing on May 20, 2026, on June 4, 2026, the hearing officer issued a decision upholding "JHA's request offering you the opportunity to remain a participant in good standing with the JHA HCV Program . . . seeking a repayment agreement to recoup this overpaid assistance."

<u>Improper HCV Program Assistance Termination</u>

On June 17, 2026, JHA sent notice (2026 Payment Notice) to Ms. Brock renewing the demand for payment and stating "[f]ailure to repay JHA the Overpayment Amount in full in accordance with the Repayment Terms shall result in 'immediate termination' from the Housing Choice Voucher Program." A copy of the 2026 Payment Notice is attached as Exhibit 2. The Payment Notice fails to provide the opportunity for an informal hearing to challenge the termination of assistance.

On July 28, 2026, Ms. Brock received from JHA a "Final Notice Terminating HAP Contract with Owner" terminating rental assistance effective July 31, 2026 (Termination Notice). A copy of the Termination Notice is attached as Exhibit 3. The reason for termination is stated "[f]ailure to comply with family obligations/ failure to pay debt owed to the agency." The Termination Notice further states "[t]his action is final and it is not eligible for an informal hearing." The Termination

Notice fails to provide an opportunity for an informal hearing to challenge the termination of assistance prior to the effective date of termination.

Despite JHA's failure to provide a proper notice of assistance termination which included an opportunity for an informal hearing, on August 3, 2026, Ms. Brock made a request for a hearing to challenge the "Final Notice Terminating HAP Contract with Owner."

On August 3, 2026, Ms. Brock received a response (Grievance Response) from JHA Executive Director of the HCV Program, Andrew Denicola, that her hearing request was denied because "[h]earing already conducted, no additional hearings will be granted." A copy of the Grievance Response is attached as Exhibit 4.

If Ms. Brock had been offered a hearing, as is required by law, to grieve the decision to terminate her assistance, she would have requested one. If Ms. Brock had been offered a hearing, at the hearing she would have raised many concerns relating to her inability to make payment by the July 28, 2026, deadline for payment, including JHA's failure to offer a repayment agreement vs. making one lump sum payment. She would have requested an extension of the time to make payment. She would have also asked the hearing officer to review JHA's failure to adequately consider the circumstances of the termination pursuant to 24 C.F.R. § 982.552(c)(2). She would have offered to make payment in full as she now has the

funds to pay in full. Ms. Brock was denied the opportunity to grieve these matters prior to termination of her HVC Program assistance. The informal hearing concerning the calculation of her income held in May 2026 did not concern or address these matters because the events giving rise had not yet occurred. That hearing was therefore insufficient to meet constitutional and regulatory requirements prior to assistance termination.

Plaintiff, via counsel, made requests for reinstatement on August 25, 2026, to Andrew Denicola, and on September 2, 2026, to the JHA Board of Commissioners. A copy of these requests are attached as Exhibits 5 and 6.

JHA has now ceased its payment of the rental subsidy to Ms. Brock's landlord starting August 1, 2026, and did not pay the August or September HAP. Ms. Brock cannot afford, and has not been able to pay, the full monthly contract rent of $1,270.00 without the HCV Program assistance.

As a result of Defendants' actions, Plaintiff has been deprived of the rental subsidy payment of $1,270.00 for the months of August and September, as well as denied the $20.00 utility reimbursement payment for August and September.

Plaintiff fears her landlord will very soon initiate eviction proceeding in state court seeking to evict her for nonpayment of rent for the last two months. Plaintiff's Declaration is attached as Exhibit 7. Her landlord's Declaration is attached as Exhibit 8.

**Conduct and Persons Subject to Restraint**

Plaintiff is requesting that the Court restrain Defendants JHA, Ms. Corbett, and Mr. Denicola from enforcing its defective termination of Ms. Brock's HCV Program assistance and requiring that it make payment of the HAP to Ms. Brock's landlord, as well as the $20.00 utility reimbursement to Ms. Brock from August 1, 2026, to the present. Plaintiff is seeking an order of the Court requiring JHA to adhere to constitutional and statutory requirements if it continues to seek to terminate her assistance.

**No Bond or Security Should Be Required**

The amount of security or bond is a matter for discretion of the court. Plaintiff is indigent, elderly and disabled, and any requirement for a substantial bond or security would effectively deny Plaintiff's access to judicial review.

**Memorandum Of Law in Support of Preliminary Injunction**

**I. Argument**

**Plaintiff is entitled to a preliminary injunction requiring JHA to reinstate Plaintiff's Section 8 Voucher and resume making Housing Assistance Payments to Plaintiff's landlord at Least Until she is Given Proper Process**

**A. The standard for issuance of a preliminary injunction**

To obtain a Preliminary Injunction, the movant must demonstrate: (1) likelihood of success on the merits; (2) irreparable harm absent injunctive relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction

is in the public interest. *Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008); *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1247 (11th Cir. 2016) (citing *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc); *accord Levi Strauss & Co. V. Sunrise Int'l Trading, Inc.*, 51 F.3d 982, 985 (11th Cir. 1995)).

**B. There is a substantial likelihood that Plaintiff will prevail on the merits of the case**

There is a substantial likelihood that Plaintiff will be successful on the merits of her Due Process claim. As outlined in the Complaint, Defendants terminated Plaintiff's Voucher before they provided Plaintiff with a hearing. JHA's actions constitute a violation of Plaintiff's right to due process and entitle Plaintiff to prevail on the merits on her claim that her assistance was terminated without due process.

Section 1983 "provides a cause of action to a plaintiff who can prove that a defendant acting under color of state law deprived [her] of a right, privilege, or immunity protected by the laws or Constitution of the United States." *Yarbrough v. Decatur Hous. Auth.*, 931 F.3d 1322, 1325 (11th Cir. 2019) (*citing Lane v. Philbin*, 835 F.3d 1302, 1307 (11th Cir. 2016)).

It has long been "established beyond question" that due process requires a hearing before one can be deprived of public assistance that had been awarded because of need. *Davis v. Mansfield Metro. Hous. Auth.*, 751 F.2d 180, 187 (6th Cir. 1984); *see also Goldberg v. Kelly*, 397 U.S. 254, 261-64 (1970); *Caulder v. Durham Hous.*

*Auth.*, 433 F.2d 998 (4th Cir. 1970); *Escalera v. New York City Hous. Auth.*, 425 F.2d 853 (2d Cir. 1970). Specifically, participation in the Section 8 Voucher Program creates a property interest protected by procedural due process, which "requires a hearing prior to termination." *Davis v. Mansfield Metro. Hous. Auth.*, 751 F.2d 180, 185 (6th Cir. 1984). Federal regulations require that when, as here, a PHA has made a determination to terminate assistance for a participant family, "the PHA must give the opportunity for an informal hearing before the PHA terminates housing assistance payments for the family under an outstanding HAP contract." 24 C.F.R. § 982.555(a).

In this case, Defendants failed to provide Plaintiff with a hearing prior to termination of her public assistance. Defendants failed to include the opportunity for a hearing in the notice of termination. Plaintiff requested a hearing on her own and then through counsel, but was still denied. The informal hearing concerning the calculation of her income held in May 2026 did not concern or address termination of her assistance because the events giving rise to those concerns had not yet occurred.

By failing to provide Plaintiff a hearing, then terminating Plaintiff's assistance and the Housing Assistance Payments, Defendants violated Plaintiff's right to due process under the Fourteenth Amendment. Because the law is well-settled and Plaintiff believes there are few, if any, disputed facts, there is a

substantial likelihood that Plaintiff will prevail on the merits of the case that the termination was done without due process.

**C. Plaintiff will suffer irreparable harm absent injunctive relief**

Plaintiff is a low-income, elderly, disabled woman who relies on public housing assistance. Defendants terminated Plaintiff's Housing Choice Voucher effective July 31, 2026. By terminating Plaintiff's assistance, Defendants have made Plaintiff responsible to pay her landlord the full contract rent of $1270.00, which she cannot do or afford. Prior to termination, Plaintiff did not have a rental portion since her income is so low. As a senior with a disability on a very limited income, the only way Plaintiff can avoid homelessness is through housing assistance. Defendants' actions have exacerbated Plaintiff's precarious financial situation and threatened her continued occupancy. Absent court intervention, Plaintiff will suffer irreparable harm through the loss of her housing assistance, threat of eviction, and danger of homelessness.

Many Courts have found irreparable harm when a tenant's housing subsidy is terminated. *See, e.g., Badri v. Mobile Hous. Bd.*, Case No. 11-0328-WS-M, 2011 WL 3665340 (S.D. Ala. Aug. 22, 2011) (finding irreparable harm because the loss of voucher assistance would require plaintiff to either dedicate most of his regular income to rent or relocate to cheaper, less satisfactory housing); *Roundtree v. HUD*, Case No. 5:09-cv-234-Oc-10GRJ, 2009 WL 7414663, at *7 (M.D. Fla. Aug. 28, 2009)

(finding irreparable harm because termination of project-based HAP contract would subject tenant to the legal prospect of eviction); *Young v. Maryville Hous. Auth.*, Case No. 3:09-cv-37, 2009 WL 2043891 (E.D. Tenn. July 2, 2009) (finding loss of rent subsidy to constitute irreparable harm).

Courts have also concluded that "[t]he threat of eviction and the realistic prospect of homelessness constitute a threat of irreparable injury and satisfies the first prong of the test for preliminary injunctive relief." *McNeill v. N.Y.C. Hous. Auth.*, 719 F.Supp. 233, 254 (S.D.N.Y. 1989)*; see also Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Tr.*, 636 F.3d 1150 (9th Cir. 2011) ("It is well-established that the loss of an interest in real property constitutes an irreparable injury); *Johnson v. Macy*, 145 F.Supp. 3d 907, 919-20 (C.D. Cal. 2015) (threat of wrongful eviction would create irreparable harm given plaintiff's below-market rent); *Young,* 2009 WL 2043891, at *9 (E.D. Tenn. July 2, 2009) ("the threat of eviction and the realistic prospect of homelessness constitute a threat of irreparable injury"); *Aguirre v. Aurora Hous. Auth.*, Case No. 91-c-7847, 1991 WL 287109, at *5 (N.D. Ill. Jan. 2, 1992) (prospect of being without home and without ability to obtain housing constitutes irreparable harm).

Defendants have placed Plaintiff at imminent risk of eviction and homelessness by improperly terminating her Voucher. Plaintiff cannot apply for a new Voucher because Defendants have closed the waiting list. Jacksonville

generally lacks affordable housing, with only 48 affordable units for every 100 renters earning 50% or less of the area median income. Dan Scanlan, Jax Today, *$20M fund established to spark affordable rental housing in Jacksonville*, Jax Today (Aug. 20, 2026) (available at https://jaxtoday.org/2026/08/20/affordable-housing-fund-jacksonville/) (citing the University of Florida Shimberg Center for Housing Studies); *see also Owens v. Hous. Auth. of Stamford*, 394 F. Supp. 1267, 1271 (D. Conn. 1975) ("[w]ith impending eviction from their homes almost a certainty, the plaintiff's harm is great and immediate; with low-rent public housing as scarce as it is, the injury suffered by eviction is irreparable"). Absent this Court's intervention, Plaintiff will suffer irreparable harm because there is a substantial likelihood she will be evicted, become homeless, or both.

**D. The threat of eviction and homelessness outweighs any potential harm to Defendants**

Defendants will not be prejudiced if the Court orders them to reinstate Plaintiff's Voucher and pay Plaintiff's landlord the Housing Assistance Payment. Housing Assistance Payments are paid using federal funds specifically designated for such use, and Defendants are obligated to make these payments until a participant is properly terminated. Requiring Defendants to continue providing housing assistance to Plaintiff is consistent with their mission to "provide safe, clean, affordable housing and effective social services to low- and moderate-income families and individuals." Home Page, Jacksonville Housing Authority

(available at https://www.jaxha.org) (last accessed Sept. 8, 2026); *see also Perkins-Bey v. Hous. Auth. of St. Louis County*, 2011 WL 939292, at *4 (E.D. Mo. Mar. 14, 2011) (equities favored tenant because requiring continued PHA assistance payments "can have little effect on its ability to fulfill its mission"). The looming threat of homelessness and insecurity outweighs any loss or prejudice to Defendants.

Here, requiring Defendants to reinstate Plaintiff's housing assistance presents no harm because it is merely requiring Defendants to abide by the law given her housing assistance was improperly terminated.

**E. There is no adverse effect on the public interest**

Granting Plaintiff's Motion for Preliminary Injunction would have no adverse effect on the public interest. Indeed, Congress has repeatedly expressed that it is in the public interest to benefit low- and moderate-income citizens through the provision of affordable, decent, safe, and sanitary housing. *See, e.g.*, 42 U.S.C.A. § 1437(a) (establishing low-income housing programs under umbrella of public interest and welfare); *Roundtree*, 2009 WL 7414663, at *7 (citing *Cole v. Lynn*, 389 F.Supp. 99, 105 (D.C. 1975) ("there can be no doubt that it is in the public's interest to permit low-income and very low-income families to remain in subsidized housing, at least until their constitutional due process rights are fully exercised"). Specifically, the Section 8 Voucher Program exists for the "purpose of aiding lower income families in obtaining a decent place to live." *See* 42 U.S.C.A. §

1437(f). It is in the public interest to support the national policy of providing affordable housing by granting Plaintiff's Motion for Preliminary Injunction to ensure Plaintiff remains safely and stably housed rather than have her rental assistance be unlawfully terminated.

**F. Waiver of bond**

Rule 65(c), Federal Rules of Civil Procedure, generally requires that an applicant for a preliminary injunction give security "in such sum as the court deems proper" for costs and damages which may be occurred by any party who will be wrongfully enjoined. Courts consistently waive the payment of surety when the applicant for the restraining order is indigent. Under this rule, the necessity of both the posting and the amount of security "'is a matter within the discretion of the trial court ... [, and] the court may elect to require no security at all."' *Advice Interactive Grp., LLC v. Web.com Grp., Inc*., No. 3:17-CV-801-J 39MCR, 2017 WL 6554409, at *15 (M.D. Fla. Oct. 20, 2017), affd. 734 Fed.Appx. 712 (11th Cir. 2018) (quoting *BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs., LLC,* 425 F.3d 964, 971 (11th Cir. 2005) (holding that"[t]he district court did not abuse its discretion when it declined to set a bond amount.")); see also *Tancogne v. Tomjai Enterprises Corp.*, 408 F. Supp. 2d. 1237, 1252 (S.D. Fla. 2005) ("This court has the discretion to issue a preliminary injunction without requiring Plaintiffs to give security, notwithstanding the seemingly mandatory language of the

rule")(emphasis added.); *See, e.g., Park Vill. Apts. Tenants Ass'n v. Mortimer Howard Trust*, Case No. C-09-4780, 2010 WL 431458 (N.D. Cal. Feb. 1, 2010), *aff'd in part, rev'd in part*, 636 F.3d 1150 (9th Cir. 2011) (waiving bond requirement for indigent plaintiffs); *Jackson v. Jacobs*, 971 F.Supp. 560 (N.D. GA. 1997) (no bond required for preliminary injunction against PHA in wrongful termination case).

## II. Conclusion

In order to preserve the status quo and to prevent Plaintiff from being evicted and becoming homeless, Defendants must be required to immediately rescind their Final Notice Terminating HAP Contract with Owner, reinstate Plaintiff's Voucher, and continue to make Housing Assistance Payments to Plaintiff's landlord and require Defendants to give Plaintiff due process. For the foregoing reasons, Plaintiff respectfully requests that the Motion for Preliminary Injunction be granted and preliminary injunction be entered.

WHEREFORE, Plaintiff Harriet Brock respectfully moves the Court for a preliminary injunction that, pending a hearing on Plaintiff's request for a permanent injunction:

A. Enjoins the Defendants from enforcing the Termination Notice;

B. Restrains Defendants, their successors in office, and their servants, agents and employees, and those acting in concert with them from terminating Plaintiff's voucher assistance unless authorized by law;

C. Orders Defendants to make rental assistance payments to Plaintiff's landlord pending a hearing on Plaintiff's request for a permanent injunction;

D. Orders Defendants to make utility reimbursement payments to Plaintiff pending a hearing on Plaintiff's request for a permanent injunction; and

E. Grants such other and further relief as may be necessary and proper.

Dated: September 23, 2026

Respectfully Submitted,
**Jacksonville Area Legal Aid, Inc.,**
**Attorneys for Plaintiff, by**

*/s/ Mary E. DeVries*
Mary E. DeVries
Fla. Bar No. 1000446
126 West Adams Street
Jacksonville, Florida 32202
Phone: (904) 515-2609
Fax: (904) 515-2609
Email: mary.devries@jaxlegalaid.org

*/s/Emma King*
Emma A. King
Fla. Bar No. 1049069
126 West Adams Street
Jacksonville, FL 32202
Phone: (904) 356-8471 Ext. 368
Fax: (904) 322-7772
Email: emma.king@jaxlegalaid.org